case number 20-2226 from the Southern District of Iowa, Susan Ackerman v. State of Iowa et al. All right, Mr. Graham, we'll hear from you first. Thank you, Your Honor. Please, the court and counsel, my name is Wes Graham, I'm with the Duncan Green firm in Des Moines, Iowa, representing appellant Susan Ackerman. We've appealed from the Southern District of Iowa's ruling granting summary judgment for defendant on all of plaintiff's claims brought in her fifth amended complaint. I'd like to jump right into some of the specific arguments, as there are a number of claims before the court here today. One of the overarching issues is just what is adverse employment action? The lower court held that the suspension of Ms. Ackerman, pending termination, was not an adverse employment action, just that her termination was the adverse action. The court cites to the Eighth Circuit cases of Polzinski and Singletary, but in those cases the court held that it was not adverse employment action when the employee was suspended with pay, pending investigation, and at the end of the investigation that employee was returned to their status, to their position, excuse me. So that's not what we have here. Ms. Ackerman was suspended and then terminated, so those cases are an opposite. Every case has explored the issue, cited to in our brief from the Ninth Circuit, the Tenth Circuit, Eastern District of Missouri, has held that when there is a suspension, even with pay, pending an investigation, and the employee is then terminated, that that suspension and termination are both adverse employment actions. The case cited to by the Pelley's and Jones is explicitly an opposite, in that the Title VII case stated that we need not consider and do not consider whether a paid suspension constitute an adverse action in the retaliation context. Similarly, the Voss case from the Eighth Circuit that the appellees cite to, they said the court just did not reach that issue, said that it did not need to reach the issue of suspension because the action failed on other grounds. So I think the character of the suspension should change depending on what happens after the suspension. Your Honor, I believe that's because the, it changes because that's what triggered. In this case, the suspension triggered, set in motion everything that followed. The termination, the ethics complaint, the criminal action. So it is the triggering moment that creates the adverse action. And so if the court would consider the suspension as the initial adverse action, then we're dealing with a three-month temporal connection between the protected speech, the speech that Ms. Ackerman gave before the Iowa Senate Committee, and if the court would then look at its decision in Hudson, which it held that three months and a prior exemplary record is enough for a jury to infer a causal link, then that's the same facts we have here. And it's certainly enough, not only to survive summary judgment, but for a jury to come back in favor of Ms. Ackerman on the causation element. We're not just relying on the temporal link, and we have submitted numerous facts of direct circumstantial evidence to survive summary judgment, and this court in Selner held that circumstantial evidence is enough to survive summary judgment, but we've submitted more than that. We've submitted direct evidence of IWD directors, Wailert's animus and negative attitude towards Ackerman's protected speech, in addition to circumstantial evidence. The court held, and defendants argue on appeal, that the defendants should be shielded, essentially, from liability because of this changing of the guard between Ms. Wailert being the director when Ms. Ackerman was suspended and Ms. Townsend being the director when she was terminated, which is a short, less than two-month window, but that doesn't break the causal link. As discussed by this court in the Wilson and Robinson cases, the causal link is only broken if the decision-maker for the alleged retaliatory decision was unaware of the protected activity that forms the basis of the retaliation claim. The record shows that at the time of Ms. Ackerman's termination, director Townsend was aware of Ackerman's testimony, she was aware of Ackerman's contention that she was being retaliated against, she was aware of the disparate treatment between Ackerman and A.L.J. Lewis, and she was aware of all this and did nothing to verify whether Ackerman was actually being retaliated against. Counsel, I'd like to ask you briefly about the state constitutional law claim that you've raised. If I'm understanding things right, the Iowa Supreme Court has not found yet if Article 1, Section 7 of the Constitution is self-executed. Is that correct? Your Honor, I believe that's correct as to that specific issue as to free speech. So essentially, I mean, we're making an eerie guess here. Is that an accurate characterization? I don't believe so, Your Honor. I believe that this court now has some direction from the Iowa Supreme Court based on its decision in the Wagner case, I believe issued in December of last year, and that issue was whether the Iowa Torts Claim Act, Chapter 669, provided the mechanism for these constitutional claims. Whether that was the execution mechanism by which we can pursue these state tort constitutional claims. Well, and that case too, if we're talking about the same case, raised the all due care standard defense as well, but didn't really highlight what that is. Would you agree with me on that? I believe the due care is still a not perfectly defined standard under Iowa law. I believe that... Let me ask, if you lose, I think you have one federal claim here, right? Is that a 1983 claim? I believe that's correct, Your Honor. So let me give you a... Suppose you lose on that in this court. Are we required to resolve what I view as fairly complex issues of state law, or could we remand with instructions to dismiss without prejudice and send that to the state courts? I find those to be fairly difficult issues and fairly novel issues, and trying to figure out how this Iowa Supreme Court might rule struck me as fairly challenging. Your Honor, I believe I, having not thought of that issue, it's certainly that perhaps could be an option. I just don't know what issues would arise with having to refile given just, you know, this case has been going on. We've been to the Iowa Supreme Court once. These actions happened in 2015. There would be sexual limitations issues, I'm sure, for refiling, and therefore I'm sure appellant would be prejudiced perhaps by such a ruling. We didn't choose to be, respectfully, we didn't choose to be in front of the Iowa or Southern District of Iowa. We've spent three or four years in the Iowa state court system, and then... Understood. Yeah, I understood. I think that's a fair point. Thank you. Yes, Your Honor. So just highlighting, I believe we covered the... There is a causal link, even though there's two different directors. We've discussed the Iowa constitutional claim that the 11th Amendment, we believe the court should look to the Ninth Circuit in the Embry case, specifically on point as to whether this waiver issue applies. Our position, and as held by the Ninth Circuit, is that the waiver, when the state removes, they waive the 11th Amendment. And that should apply to claims existing at the time of removal and claims subsequently brought, specifically here where the state, the defendants were aware that we were bringing this claim. We were going through the Chapter 669 process, and they were aware of it, and they consented to it. And then now, in summary judgment, they sought dismissal. Very briefly, just regarding the intentional infliction of emotional distress claim, the lower court stated that this claim was barred by the Iowa Supreme Court case in Ferguson. That Ferguson case, that's why we consented to the dismissal of our wrongful discharge in violation of public policy claim, because that's what the Ferguson court held. It held that if a statute provides a public policy and that same statute provides a remedy, you can't, and there's just the tort for wrongful discharge isn't necessary. But that's as far as it went. It did not hold that any other tort, such as intentional infliction of emotional distress, would be somehow barred by, in this case, Iowa Code Section 70A28. I believe that I'm coming up on my time that I reserve for rebuttal, so unless your honors have a question, I'd like to reserve that time at this point. I have one short question. Is there any difference between the merits of your First Amendment retaliation claim and the merits of your Iowa Article 1, Section 7 retaliation claim, free speech claim, or are they basically the same, just under two different, just under federal and state provisions? Certainly it's the same set of operable facts, your honor. There is the due care defense in the Iowa constitutional claim, and there are the standards for 1983 claims, which apply, but same operable facts. All right, thank you for your argument. Mr. Langholz, we'll hear from you. Good afternoon. May it please the court, Mr. Graham. After more than six years of litigation and numerous forums, Ms. Ackerman has failed to discover or present in this case any evidence from which a jury could find that she was of her testimony to a legislative committee, rather than because she falsely claimed her daughter was unmarried to get free health insurance repeatedly over several years. For this reason, the district court properly granted summary judgment of her state whistleblower claim, First Amendment claim, and state free speech claim. Ms. Ackerman's defamation claim also fails because of state sovereign immunity and her intentional infliction of emotional distress claim is not the rare employment case that presents sufficiently outrageous conduct. So jumping right into the whistleblower claim, the First Amendment claim, and the constitutional free speech claim, I think, although it's unclear what a state constitutional free speech claim would be, to the extent Ms. Ackerman is, you know, asserting operative facts and her version of the claim, I would agree with your question or the premise of your question, Judge Colleton, that it's largely the same as the First Amendment, and I think all three of those claims can be dismissed and were properly dismissed based on, you know, a failure to present a material fact issue on any connection between Ms. Ackerman's termination and any protected activity, either for the whistleblower, First Amendment, or constitutional free speech. The, her violation was discovered by an unrelated, you know, HR staff person, you know, there's no suggestion that it was discovered by the director of the department, Ms. Wailert, or anyone else, you know, with motives, you know, connected to concerns about the original legislative testimony. There was a fair investigation, you know, an extensive investigation, you know, conducted over a significant, you know, with multiple interviews of Ms. Ackerman. It was supported by strong evidence. It's a rare case, perhaps, where there's, you know, an email exchange where Ms. Ackerman admits in questioning, knowing that her daughter was married, and then the HR, a different HR person that she was inquiring to responds, who has to know that she was married? And Director Wailert, you know, who Ms. Ackerman's testimony at the legislative committee was not involved in making the termination decision, neither was her direct supervisor, who was the ultimate decision maker, Mr. Slater, had moved into that role after the testimony as well, was unrelated to any of the concerns that Ms. Ackerman had raised in her protected testimony, and so really, there was, the district court properly concluded that there was no termination in Ms. Ackerman's protected activity, and for that reason, Judge Kobus, you know, I think this court could avoid any question about whether or not there is a state constitutional claim, whether it's self-executing, whether or not, you know, there's an adequate remedy, what the all due care defense, you know, would be under the Iowa Supreme Court without having to send the case back for further consideration in the state courts, but those are all alternative grounds as well for defeating the state constitutional claim. As we point out in footnote 5 on page 64 of our brief, you know, one pretty clear and clean basis for affirming, admittedly not one that was directly presented to the district court, was that Ms. Ackerman had an adequate remedy to assert this claim under the whistleblower statute. As we just talked about, the claims are essentially, you know, all tied together under the God-free analysis as to whether or not, you know, you can bring a constitutional tort if a constitutional provision is self-executing, the next step of the analysis is to consider whether there's already an adequate remedy, the deciding decision in God-free, you know, concluded that an equal protection constitutional claim couldn't be brought because the Iowa Civil Rights Act was an adequate remedy. This is much the same and would be another basis for affirming the state constitutional claim. Additionally, what is the statute you're suggesting there? I didn't follow you when you started your argument there. Sure. If I understand your question, you're asking what's the adequate remedy? Yes. Yeah. It's the whistleblower statute, so plaintiff's claim count one, Iowa Code 7828, which, you know, is she brought a claim protecting for retaliation for whistleblowing. It's in substance, that claim is, you know, largely the same as the First Amendment claim and also the state constitutional claim. So it would be analogous to the Civil Rights Act in God-free being an adequate remedy for an equal protection constitutional claim. And that would provide another basis for affirming the dismissal of the Iowa constitutional claim as well. Additionally, you know, the all due care defense, you know, which admittedly is not fully defined by the Iowa Supreme Court, could be a basis for doing so. The state also asserts, you know, that sovereign immunity is a basis for defeating the First Amendment claim because, you know, as we've already discussed, the Iowa Supreme Court has not yet recognized that this is a self-executing claim that can be brought as a constitutional tort. I'd like to remove the case. So there's a waiver issue there on sovereign immunity, 11th Amendment at least. What's what's your go ahead. I'm getting some feedback on your microphone. I'll go ahead and let you go ahead. You're correct, Judge Colleton, that there is authority that removing the case is a waiver for 11th Amendment purposes. The Supreme Court, you know, in Lapidus, you know, recognizing that, however, you know, said that it was not deciding a case where there was a question about whether or not the state had waived sovereign immunity in the first instance for that kind of claim, even in state court. And so even if this court is uncomfortable with the district court's conclusion that 11th Amendment immunity barred this sovereign immunity based on there not being a waiver for the First Amendment claim is an alternative basis as well that was presented to the district court. The state does argue as well that this is distinguishable from from the situation where there's state claims removed into federal court and then immediately the state seeks to dismiss those claims. This state constitutional claim was brought after the fact. And that we believe is also a basis and is what the district court relied on in the 11th Amendment sovereign immunity. Turning to the intentional inflection of emotional distress, even if Ms. Ackerman is correct that the whistleblower statute was was not a basis for preempting that claim as one of the district court's reasonings, the district court's alternative basis for dismissing the claim also provides a basis for affirming the district court. You know, this claim does not present the outrageous behavior that is a stiff bar in the Iowa Supreme Court, particularly with respect to employment claims largely in the last four decades. There's only been one instance in which that bar has been met and was an extended period where a group of supervisors, you know, were ostracizing an individual to harm to himself and others, you know, in order to cover up for criminal activity. You know, this does not present those sorts of facts. The Hedlund case that we cited is somewhat similar and is a situation where there was concerns that public comments were made that disparaged the individual in that vein. Turning to the defamation claim as well, the district court properly concluded that that claim was dismissed against Defendant Teresa Wailert because it was protected by sovereign immunity because her testimony was within her scope of employment. This was she was called as the director of the department to a government oversight committee, was answering questions about department activity, although in some instances, you know, scope of employment could be a question for the jury here. There's no dispute of facts that this was within her scope of employment and was therefore a claim that was Iowa has not waived its sovereign immunity for. In addition, qualified privilege is another basis that the district court concluded and would be an alternative basis for affirming that claim because, again, this testimony was in good faith at a legislative committee. And finally, if those reasons aren't enough for the defamation claim, Ms. Ackerman fails to to meet the required elements of defamation because the the the testimony of Teresa Wailert at the committee was not defamatory. She wasn't attacking Ms. Ackerman. She was answering a question about why she had selected another ALJ to serve as a lead worker, despite some concerns that had been raised about her. And in responding to that, she said she didn't think those sorts of concerns were an appropriate basis to to to not select someone and pointed out that all ALJs have bad days and pointed out that Ms. Ackerman had similar issues with respect as as the lead worker had as well. Well, why couldn't that be false? Well, the fact that it's not the falsity also is another failure with it. But with respect to, you know, even if we were to assume that that it was false, it was not conduct. It was not intended to defame the individual. It did not mean it was not a negative in in light because it was statements that were saying that she thought all ALJs could have bad days and could have problems with respect to their decisions from time to time. I believe the one last point that I'd like to address, you know, that Mr. Graham started off arguing about what is an adverse employment action. I think largely this question is, you know, is a moot one because regardless of whether you consider the paid administrative leave to be an adverse employment action or the termination, for all the reasons we've discussed, there's no connection to no connection to any sort of protected activity. But the district court did correctly conclude that the paid administrative leave is not an adverse employment action. It's correct. The Eighth Circuit case is cited, you know, did not have a termination after the fact. There is no indication in the cases that that was a critical basis for the rationale. It would seem logical that that's just because you're typically not going to be fighting about whether or not there is an adverse employment action unless it comes down to being dispositive in the case. So when there's a termination, you know, clearly there's an adverse employment action. We're not disputing that that that's the case here. And it's a rare case where when you have a termination, there would need to be a fight about whether or not the investigatory paid administrative leave, you know, in advance of that is also an adverse employment action. Also, the other thing is that you're saying there was a gap in time between the protected conduct and the termination. And Ackerman is saying, no, you got after me more quickly because you suspended me promptly or closer in time. And so it is relevant in that respect, isn't it? Arguably, it has, you know, some minimal relevance there. I mean, either three months or five months, you know, is is not particularly close proximity under under the cases. But admittedly, it is closer in time if if the termination counts as a purpose of it. But again, ultimately, the district court properly concluded that it was not an adverse employment action. The Ninth Circuit cases cited by Mr. Graham, you know, holding otherwise, you know, talked about other consequences to the training opportunities, you know, things that made it more than just an unpaid investigatory leave that was provided to protect the agency from any sort of inappropriate behavior, continued inappropriate behavior and provide an opportunity for the fair investigation that ultimately supported its termination decision. For that reason, the district court's order granting summary judgment should be affirmed. All right, thank you for your argument, Mr. Graham, we'll hear from you in rebuttal. Thank you, Your Honor. I want to jump right in with what counsel led with about the stated reason for Ms. Ackerman's termination. It's certainly a fact question whether defendants would be able to show a legitimate basis for her suspension and termination. If the court would look at the termination letter, which is a joint appendix 360, she was terminated for committing fraud, for deliberately falsifying this insurance application. But the investigator, defendant John Nelson, testified in his deposition that he believed that Ackerman was forthright for her bases, for filling out the application the way that she did, that she relied on Ms. Reynolds. And he testified that he believed her when she testified during the hearing that she wouldn't have done the same thing. She wouldn't have checked that box claiming her daughter as a dependent if she'd been given the same advice and direction that human resources associate Heather Simpkey gave her in 2014. So there's a fact question about whether that is a legitimate basis for termination that should have survived summary judgment. Isn't it hard to get around, I think, what the district court called the fatal defect, though, and that is that the actual termination was by someone who was not involved in the testimony. And I forget what the record says about the level of awareness, but isn't that really a fatal disconnect or defect in your case? Your Honor, I don't believe so. I believe that it only would be fatal, as stated by this court in the Wilson and Robinson cases, if the decision maker just wasn't aware at all about the protected activity. I think that if what the lower court held was true and accurate statement of the law, that the only time a person could have a retaliation claim is if their boss or boss's boss or the decision maker, if they were testifying against that specific person. So I believe that would be too narrow an interpretation of what's considered protective activity and retaliatory adverse employment action. Another factor that is that she was a director of Townsend and was aware, not only the protected activity, not only did Ackerman complain that it was retaliatory, but the circuit of the disparate treatment between Ms. Ackerman and Ms. Lewis, the other ALJ, both allegedly lied under oath, both denied intent, both had the same employment positions, both had the same supervisors. Nothing happened to Ms. Ackerman, on the other hand, suspended, terminated, ethics complaint filed against her by the IWD and referred for criminal investigation. That disparate treatment is enough circumstantial evidence for our retaliatory claims to, or should have survived summary judgment. I'd say that Lewis and Ackerman are similarly situated. I thought Lewis came forward right after the hearing and acknowledged that she testified inaccurately. Am I remembering that right? I believe that Wailert's deposition testimony reflected that Lewis came to her after the fact and she said, well, this may have been a misstatement, but her testimony to the Senate committee, she was asked three times, she was given three times to correct herself. And each time she said, nope, never, never, ever recorded my code. So, they are, I don't want to say exactly, but they're so similarly situated so as to raise the inference of disparate treatment. What happened, by the way, does the record show when if Lewis came to Wailert after and said that I testified inaccurately, did somebody notify the committee? If my memory serves, and that's a big if, my understanding is that Wailert may have addressed that the next day during her testimony. I see that I'm out of time. I will refer to my brief regarding the defamation issues. As far as adequate remedy is concerned, the House of Civil Rights provides adequate remedies. It provides broad remedies, whereas the remedies under 78.28, it's just equitable. It's reinstatement. So, we believe that adequate remedy argument that counsel raised fails. So, I thank you for your time, your honors. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file an opinion in due course.